**James L. FERGUSON, Respondent,**

v.

**The BOARD OF POLICE COMMISSIONERS OF KANSAS CITY,**
Missouri, Appellant.

**No. WD 41955.**

Missouri Court of Appeals,
Western District.

Jan. 16, 1990.

James Patrick Frickleton and Max Foust, Kansas City, for appellant.

James L. McMullin, Kansas City, for respondent.

Before NUGENT, C.J., FENNER, J., and SOLBERT M. WASSERSTROM, Senior Judge.

SOLBERT M. WASSERSTROM, Senior Judge.

The Kansas City Chief of Police disciplined Officer Ferguson for violating a regulation requiring Kansas City police officers to be residents of Kansas City, Missouri. Ferguson appealed to the Board of Police Commissioners which held a formal hearing and found that Ferguson did not have a bona fide residence in Kansas City, Missouri, and accordingly, affirmed the Chief of Police. Ferguson then appealed to the circuit court which reversed the Board. We reverse the circuit court and reinstate the ruling of the Board of Police Commissioners.

Ferguson while a police officer of Kansas City, Missouri, maintained a residence with his family at 8506 E. 93rd Terrace, Kansas City, until 1977. During 1976, his wife began demanding a move outside of Kansas City. Responding to that insistence, Ferguson joined with his wife on April 21, 1977, in the purchase of a residence at 301 Royal, Raymore, Missouri. The wife and the three younger children then moved to the new Raymore residence. Officer Ferguson, however, rented a room from the Bennetts, neighbors across the street at 8703 E. 93rd Terrace. His oldest daughter also stayed with the Bennetts in 1977 until the end of her then current school year. All four children now go to school in Raymore–Peculiar.

Ferguson continued to stay at the Bennett home thereafter, although he ceased paying rent because the Bennetts decided that it was worth at least the equivalent of rent to have a police officer staying in their home for safety and protection. Ferguson had the use of the kitchen for cooking and the run of the house. He stayed and slept there during his duty days, but usually went to Raymore to be with his family on his days off. He kept his uniform and police equipment, and also some of his civilian clothes, at the Bennett home, but he kept all of his other possessions at the house in Raymore.

He usually spent Christmases with his family in Raymore, and he and the family would usually be with his grandparents in Adrian for Thanksgiving and Easter. His family spent no holidays with him in Kansas City.

Ferguson registered to vote in Raymore in June, 1977, but last voted there in November, 1980. Although Mrs. Ferguson does not drive, the family has three automobiles: a 1974 Chevrolet van, a 1979 Chevrolet 2 door automobile, and a 1987 Nissan. The 1979 Chevrolet is registered at 301 Royal in Raymore, and Ferguson has paid personal property taxes on both the 1979 Chevrolet and the 1974 Chevrolet in Raymore. However, the Nissan is registered in Kansas City; it has a Kansas City automobile license sticker; and Ferguson has paid Jackson County and Kansas City personal property taxes on the Nissan. Ferguson's driver's license which expired October 4, 1988, shows a Kansas City, Missouri, address.

In February 1987, the police department in Kansas City received an anonymous letter complaining that Ferguson was violating the requirement that he have residence in Kansas City. That was followed by a telephone call on March 7, 1987, making the same complaint. These complaints triggered an investigation, of which the department gave Ferguson formal notice on May 13, 1987. Following that notice, Ferguson registered to vote in Kansas City. Also after that notice and approximately two months before the Board of Police Commissioners hearing was scheduled, Mrs. Ferguson filed a court suit for separate maintenance. That suit was still pending at the time of the hearing before the Board of Police Commissioners. In answer to a question from a member of the Board, Ferguson testified that the proceeding for legal separation was not for any purpose other than the department's residence policy.

Terri Hultman, a neighbor in Raymore, testified at the Board hearing. She testified that between February and September, 1987, she saw Ferguson at 301 Royal in Raymore daily or close to daily. He was frequently in uniform. She saw Ferguson more frequently at the Raymore home before and after the police department investigation. She observed Ferguson washing his car, going to get his children from school, mowing the yard, painting the house and putting up Christmas lights. When she moved into the neighborhood in March, 1985, the Fergusons introduced themselves to her as living right across the street. She stated without objection that she considers Officer Ferguson to reside at 301 Royal in Raymore.

Court review of the action of the Board of Police Commissioners is governed by the Administrative Procedure Act, Chapter 536, RSMo. Section 536.140 specifies seven areas into which the court inquiry may extend. In his petition for review and in this court, Ferguson states reliance upon five of those grounds: (1) constitutional violation; (2) excess of statutory authority; (3) lack of support for the Board's finding by competent and substantial evidence upon the whole record; (4) arbitrary, capricious, and unreasonable action and, (5) abuse of discretion.

For the purpose of attack upon constitutionality, it was incumbent upon Ferguson to state the precise constitution provision upon which he relies and the facts upon which he relies to show violation. *Perez v. Webb,* 533 S.W.2d 650 (Mo.App.1976); *Collier v. Metropolitan St. Louis Sewer Dist.,* 706 S.W.2d 894 (Mo.App.1986). Ferguson has not met these requirements, and his constitutional point therefore fails.

■ All of the other four points really come down to a single thesis argued by Ferguson, namely his contention that the Board's finding of non-residence is not supported by competent and substantial evidence on the whole record. In reviewing an administrative decision on this ground,

neither the trial court nor the court of appeals may substitute its judgment for that of the administrative body (here the Board of Police Commissioners), and the credibility of witnesses is for the administrative agency. *McNeal v. Bequette,* 571 S.W.2d 657 (Mo.App.1978); *Barnes Hosp. v. Missouri Comm'n on Human Rights,* 661 S.W.2d 534 (Mo. banc 1983); *Percy Kent Bag Co. v. Missouri Comm'n on Human Rights,* 632 S.W.2d 480 (Mo. banc 1982).

■ The determination of the key question of whether Ferguson maintained a residence in Kansas City, Missouri, calls for the application of the Kansas City, Missouri, Police Department Policy # 205 which requires that a sworn member of the police force remain a resident of Kansas City during the full term of employment with the department. The term "resident" for this purpose is defined by the Policy as: "Place where a [person] has his true, fixed, and permanent home and principal establishment and to which, whenever he is absent he has the intention of returning." It should be noted that this definition is an exact reproduction of the definition contained in *State ex rel King v. Walsh,* 484 S.W.2d 641 (Mo. banc 1972) which in turn was adopted from *In re Toler's Estate,* 325 S.W.2d 755 (Mo.1959).[1]

One special aspect of the residency concept was emphasized in *State v. Mueller,* 388 S.W.2d 53, 57–58 (Mo.App.1965). That aspect is so important to the resolution of this case that the *Mueller* opinion merits quotation at length:

"It has been said that the question of legal residence 'is often difficult to determine' [citing cases]. It will be found in every case, however, that the difficulty has arisen upon disputed facts, in the determination of which the credibility of the opposing witnesses has frequently been a factor ... [w]e have only to determine whether it [the evidence] establishes, as a matter of law, that Mr. Mueller is not a resident of the Twenty–First

---

1. The Missouri Statute also defines residence. § 1.020(13) states: "'Place of residence' means the place where the family of any person perma-

nently resides in this state, and the place where any person having no family generally lodges."

Ward. That will be found to turn on this narrow question, Which of Mr. Mueller's two *claimed* homes is his *real* home? Admonished by the old maxim, 'The beginning of knowledge is a definition of terms' we turn first, and with some misgiving, to that task.

Perhaps no word in any language is so well understood and yet so imperfectly defined as the word, 'home'. Interpretation of the concept has occupied the minds of jurists and engaged the imagination of poets in all ages, but none has given it full expression in language harmonious at once in truth and grace. Certain it is, however, that no definition can be complete which omits the element of sentiment, that quality, intangible and elusive though it may be, which nevertheless in the common understanding of a man serves most readily to identify his home and to distinguish it from every other place—that lifts it from an adjunct of living to an object of life—that goes beyond the law's language and animates the image with the breath of family affection and the gentle warmth of hospitality shared with friends, and endows it with comfort in affliction, with respite from care, and the promise of pleasant repose. . . .

In *Greene v. Beckwith*, 38 Mo. 385, 387, this definition was given, 'A man's residence, like his domicile, or usual abode, means his home, to which he goes and returns daily, weekly, or habitually, from his ordinary avocations and business, wherever carried on.' *See also:* 77 C.J.S. *Residence* p. 293, 'The residence of a man having a family which he maintains is, prima facie, where the family dwells . . .' Finally, we have a statute, § 1.020, V.A.M.S., which defines 'place of residence' as ' . . . the place where the family of any person shall permanently reside.' It is objected to this statute, however, that it refers only to the term as used in the statutory laws of the state and has no application to the St. Louis City charter. But the statute merely codifies the presumption of law that would in any event exist without it. 28 C.J.S. *Domicile* § 16b, 37."

From that perspective, Ferguson clearly had his residence in Raymore, where his family lived and where he went on his time off and for Christmas holidays. That has been and continues to be the center of his familial and social life.

A requirement that municipal employees be a resident of the municipality which employs them is fairly frequent throughout the United States. There have been a large number of situations where an employee has sought to comply with such a requirement by tactics similar to those adopted by Ferguson in the present case. The numerous decided cases on this subject have been collected in an Annotation: *Validity, Construction and Application of Enactments Relating to Requirement of Residency Within or Near Specified Governmental Unit as Condition of Continued Employment for a Policeman or Fireman*, 4 A.L.R.4th 380, § 7(a), 410 (1981). As shown from that annotation, a large majority of the cases have held that an attempt to set up a second residence for the employee within the municipality, separate and apart from his family who live outside the municipality, has been unsuccessful in winning judicial sanction. The reasoning of the courts outside Missouri has generally been consistent with that of the Missouri *Mueller* decision.

*Eastman v. City of Madison*, 117 Wis.2d 106, 342 N.W.2d 764 (1983), is fairly representative of those cases. That case involved a policeman and a fireman whose positions had been vacated on the grounds that they were non-residents of Madison, Wisconsin. Their wives and families had moved outside the city, and their children went to schools outside of Madison. The appellants spent their off-duty time in the homes outside of Madison. However, they kept apartments in Madison, had mailing addresses there, together with telephone numbers, automobile registration and voter registration. On appeal, the court held

> The location of immediate family and the site of children's schooling is significant in determining residence [citing authority]. Appellants wives and families lived exclusively outside Madison in other mu-

nicipalities. Their children attended schools in those municipalities. Appellants spent most of their off duty time in their homes outside Madison. Their maintenance of apartments and voter registrations in Madison, in light of the totality of the circumstances, establishes neither the intent nor presence necessary for residence under Madison General Ordinance 3.27

*See also Contento v. Kohinke,* 42 A.D.2d 1025, 348 N.Y.S.2d 392 (N.Y.App.Div.1973):

In the instant case, the petitioner has two locations, one within the town and one without, at which he on occasion is physically present but the board could clearly find that he spent most of his off duty time at the out of town location with his wife and children, and not the in town location, which was the home of his parents, was not where he resided within the meaning of Section 30.

Other cases holding similarly on facts similar to those in the present case are *Mercadante v. City of Paterson,* 111 N.J. Super. 35, 266 A.2d 611 (1970); *O'Boyle v. Personnel Board of Chicago,* 119 Ill. App.3d 648, 75 Ill.Dec. 177, 456 N.E.2d 998 (1983); *Miller v. Police Board of Chicago,* 38 Ill.App.3d 894, 349 N.E.2d 544 (1976); *Appeal of Borough of Zelienople,* 22 Pa. Commw. 635, 349 A.2d 812 (1976); *McCarthy v. Philadelphia Civil Service Commission,* 19 Pa.Commw. 383, 339 A.2d 634 (1975), aff'd 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976). *See however, Choike v. City of Detroit,* 94 Mich.App. 703, 290 N.W.2d 58 (1980).

The above consideration, however, is not all. In the present case, Ferguson registered and still registers two of his automobiles in Raymore and pays personal property taxes on those two automobiles in Raymore. He registered to vote in Raymore in 1977, and he did not make any move to register for voting purposes in Kansas City until after the Kansas City Police Department had begun its investigation. So also the suit by Mrs. Ferguson for separate maintenance was not instituted until very shortly before the hearing before the Board of Police Commissioners, and

Ferguson admitted that the suit was motivated solely by consideration of the residency requirement. It is significant that Ferguson does not claim that he established residency in Kansas City in 1987, but rather he claims his residency has been continuous at the Bennett house since 1977. The colorable changes made in 1987 therefore are entitled to little if any significance.

Finally, the very important testimony of Hultman must be considered. She testified that she lived directly across the street from the Fergusons in Raymore, that she had seen Officer Ferguson at the Raymore home daily, or close to daily, at least until the intervention of the Police Department investigation in 1987. The Fergusons had introduced themselves to her as living directly across the street, and she has seen Ferguson doing the normal tasks of a home owner and resident such as washing his car, picking his children up from school, mowing the yard, painting the house, and putting up Christmas lights. She considers Officer Ferguson to be a resident of Raymore.

In his opening statement before the Board, Ferguson's counsel had this to say about Ferguson: "He only goes home on his weekends ... [T]he evidence will be that he does go home on his time off ..." The Board was entitled to believe that in these statements, inadvertent or otherwise, Ferguson's counsel touched upon the real truth of this situation—Raymore was Officer Ferguson's true home—it was there he went on his time off to participate in the warmth and comfort of family life—and that the family home in Raymore, rather than the barren lodging in Kansas City, constituted his real residence.

The Board's finding is supported by competent and substantial evidence upon the whole record, and it should not have been disturbed. The judgment of the trial court is reversed, with the consequence that the Board's ruling is reinstated.

All concur.