682 N.E.2d 291 (1997)
289 Ill. App.3d 621
224 Ill.Dec. 730
ILLINOIS LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION, Plaintiff-Appellee,
v.
Mark BOOZELL, Illinois Director of Insurance, Defendant (Revere Cooper and Brass Incorporated Tax Deferred Savings Plan and Trust, Defendant-Appellant).
No. 1-96-2239.
Appellate Court of Illinois, First District, Fourth Division.
June 26, 1997.
*293 Samuels, Miller, Schroeder, Jackson & Sly (John E. Sanner, of counsel), Decatur, for Defendant-Appellant.
Hopkins & Sutter (William Carlisle Herbert, William T. Casey, of counsel), Chicago, for Plaintiff-Appellee.
Justice BURKE delivered the opinion of the court:
Defendant Revere Copper and Brass Incorporated Tax Deferred Savings Plan and Trust (the Trust) appeals from an order of the circuit court reversing the determination of the Illinois Director (Director) of the Department of Insurance that the Trust was an Illinois resident for purposes of the Illinois Life and Health Insurance Guaranty Law (Guaranty Law) (215 ILCS 5/531.01 et seq. (West 1993)) and was entitled to coverage from plaintiff Illinois Life and Health Guaranty Association (Association). On appeal, the Trust contends that: (1) the issue of residency under the Guaranty Law is a question of fact and the trial court's determination that the Trust was not a resident of Illinois was against the manifest weight of the evidence; (2) alternatively, if residency is a question of law, the Director's decision was entitled to deference by the trial court; and (3) assuming arguendo that the Trust was not a resident of Illinois, the trial court erred in failing to rule whether the Association was required to determine in which other state the Trust was a resident. For the reasons set forth below, we affirm.
The Trust was created on January 1,1985, to administer retirement benefits for the employees of Revere Copper and Brass, Inc. (Revere Copper and Brass) and related companies. The trust agreement was executed in Illinois and provided that it be construed, enforced and regulated under Illinois law.
In 1988 and 1989, the Trust entered into three guaranteed investment or group annuity contracts with Inter-American Insurance Company of Illinois (Inter-American). When the first contract was obtained, Revere Copper and Brass's activities in Illinois were carried out by Revere Ware, Inc., all of the Trust's trustees lived in Illinois, the Trust's bank account was in Illinois and the majority of the Trust's beneficiaries lived in Illinois. In late 1988, the assets of Revere Ware, Inc. were sold. In April 1989, most of the Illinois beneficiaries were "cashed out" of the Trust.
On December 23, 1991, Inter-American became insolvent and was liquidated. Pursuant to the Guaranty Law, the Association then became responsible for all contracts issued by Inter-American to persons covered by the Guaranty Law. The Guaranty Law provides that in the event of an insurer's insolvency, residents' and certain nonresidents' claims under their insurance policies are covered by the Association. The facts existing at the time of Inter-American's liquidation concerning the Trust were: (1) the Trust's three trustees lived in Florida, New Hampshire and Massachusetts; (2) there was no record of where or how the trustees communicated, about the Trust; (3) the Trust did not maintain an office in any state; (4) the Trust's bank account remained in Illinois; (5) the majority of the beneficiaries were employees of Revere Graphic Products, Inc. in Massachusetts; and (6) the Trust's administrative records were kept in Pennsylvania.
*294 On June 23, 1992, the Trust made a claim to the Association for coverage for the Inter-American contracts pursuant to the Guaranty Law. On May 25, 1994, the Association notified the Trust that coverage was denied because the Trust was not a resident of Illinois as defined in the Guaranty Law. The Trust appealed the Association's decision to the Director, who assigned the case to a hearing officer. The parties submitted briefs in which they agreed to all material facts. The parties further agreed that the Trust was a non-natural "person" as defined in the Guaranty Law and that its principal place of business controlled in determining whether it was a resident of Illinois at the time of Inter-American's insolvency. No hearing was held. The hearing officer subsequently determined that: (1) the Trust was a resident of Illinois at the time of Inter-American's insolvency for the purposes of the Guaranty Act; (2) the definition of residence was ambiguous because "[c]ourts have applied different meanings to the term `Resident' when determining the statutory intent of the term"; and (3) while historical significance (past events and conditions) is discounted under the Guaranty Law "based on the statutes [sic] requirement that residence be determined at the time of the [insurer's] insolvency," here the insurance contracts were obtained in Illinois by an Illinois trust from an Illinois insurer and the facts existing at the time of the insolvency did not outweigh that "correlation." The Director subsequently adopted the hearing officer's findings of fact, conclusions of law and recommendations, reversed the Association's decision denying the Trust coverage and ordered that the Association provide coverage.
In November 1995, the Association filed a complaint for administrative review against the Director and the Trust, seeking reversal of the Director's order. In its brief in support of its complaint, the Association argued that the issue of residency under the Guaranty Law was a question of law and that deference need not be granted to the Director's decision. The Association further argued that the Director's conclusion that the Trust was a resident of Illinois was not supported by the evidence because the Trust's only contacts with Illinois as of December 1991, when Inter-American became insolvent, were the Inter-American contracts and the Illinois bank account. The Association also argued that it was not "necessary or appropriate" for the trial court to determine in which other state the Trust was a resident because the court's decision would not be binding on any other state's guaranty association.
The Director filed his answer to the Association's complaint, which consisted of a certified copy of the administrative file, and requested that the trial court dismiss the complaint with prejudice.
In its response to the Association's brief in support of its complaint, the Trust argued that the Director correctly determined that it was a resident of Illinois for purposes of the Guaranty Law and that the trial court should affirm the Director's decision. While the Trust agreed that the issue of residency was a question of law, it argued that the trial court should give deference to the Director's decision on this issue. The Trust further argued that given the lack of a physical location of administrative activities by the Trust on the date of Inter-American's insolvency, the Director appropriately considered other factors, including the prior location of the Trust's activities, i.e., Illinois. Alternatively, the Trust argued that if the Trust's residence was found not to be in Illinois, the trial court should rule that the Association was required by the Guaranty Law to determine the state of its residence.
In May 1996, the trial court heard arguments on the Association's complaint. The Association maintained that, pursuant to the Guaranty Law: (1) one can only be a resident of one state; (2) the place of residence of a non-natural person is its principal place of business; and (3) one must be a resident of a state at the time of the insurer's insolvency. According to the Association, these three requirements provide "focal points" of time and place for determining residency. The Association contended that the Trust was not a resident of Illinois at the time of Inter-American's insolvency and, therefore, the Trust was not entitled to coverage under the Guaranty Law. The Association also argued *295 that if the trial court determined that the Trust was an Illinois resident based on facts existing outside of the "focal points" of time and place, the Trust could make claims against other states' guaranty associations and improperly receive double recovery. The Association lastly argued that the trial court should make its decision without deference to the Director because the Director had no special expertise in interpreting the Guaranty Law and that the Association was not required to determine the state of the Trust's residency pursuant to the Guaranty Law if the Trust was not an Illinois resident.
The Director argued that he relied on the legislative intent of the Guaranty Law in holding that the Trust was a resident of Illinois. He stated that he analyzed factors to determine which were the most significant in light of the Guaranty Law's statutory scheme and the intent of the legislature. The Director conceded that the Guaranty Law "discounted" prior events because of the statute's requirement that the residence of an insured be determined at the time of the insurer's insolvency. However, he argued that in this case the "correlation" between an Illinois trust obtaining insurance contracts from an Illinois insurer was the most significant factor. He further stated that because the statute requires a single state of residency and no other state could be established as the situs of residency from the record, the "status quo is * * * Illinois and * * * nothing that has been further introduced outweighs that historical evidence."
The Trust agreed with the Director that the question of where a principal place of business of an insured is located was a question of law. The Trust argued, however, that there was no single place where the business of the Trust was conducted, and further stated:
"[W]hat we were left with was the fact that the trust was created in Illinois law, under Illinois law, that our trust documents specifies application of Illinois law. The checking account is a relatively minor issue, but I think it shows that it was certainly the trust's intention that it still had some connection to Illinois. Most of its assets, I think, were in these GAC contracts."
The trial court held that the Trust was not a resident of Illinois under the Guaranty Law. The court noted that the Director's decision was "predicated on historical facts as opposed to where residence of the Trust happen[ed] to [exist] on the day of the insolvency." While the court agreed that the Trust had a residence in Illinois at one time, it found that the Trust did not conduct any of its operations in Illinois at the time of Inter-American's insolvency. The court further found that it was not its function to determine the Trust's state of residency outside of Illinois. The court opined, however, that Pennsylvania was the Trust's most likely state of residence because the Trust's records were kept there. More specifically, the court stated:
"No, the records, Pennsylvania would seem to provide a better nexus in terms of residence because that is all there is. Everything else is product, that is, people being paid. * * *
But if a question came up in terms of, are things being divided up as they should be? Are the right people receiving checks? * * *
It would appear that no case is really made for Illinois there. To the extent a case can be made anywhere, it would seem to center on Pennsylvania, if for no other reason that you would inevitably have to go to Pennsylvania to resolve anything, wouldn't you?
* * * * * *
As was the case in Kroblin[, 461 N.W.2d 175 (Iowa 1990)], the formal nexus to Illinois in terms of an underlying contract with a choice of law clause endures, but nothing having anything to do of any significant nature at all with regard to the performance under that contract takes place in Illinois. The organization that the trust relates to has long departed Illinois. The trust is administered by trustees who reside in different states, not in Illinois. They have chosen to operate through contract relationships which appear to be centered in Pennsylvania.

*296 It is not my function to place it anywhere, but it seems undisputed that the trust continues to perform functions and those functions are performed from someplace outside of Illinois.
* * * But residence, I think, in looking at all of the tests or all of the criteria that Kroblin suggests to be applied, indicates that residence is someplace where the thing lives and breaths [sic]. To the extent this thing lives and breaths [sic], it seems to be doing most of it outside of the State of Illinois these days.
I take particular note of the fact that in Kroblin, like the choice of laws clause in the underlying trust agreement, there was a formal home in terms of structure within the state of Iowa, but real operations to the extent they were anywhere [were] in Oklahoma. Well, same extent. Real operations to the extent there are any are outside of the State of Illinois."
Accordingly, the trial court reversed the Director's decision and remanded the cause with instructions that the Director affirm the decision of the Association. This appeal followed.
On appeal, the Trust first argues that the issue of residency under the Guaranty Law is a question of fact and, therefore, the trial court erred in failing to consider whether the Director's decision was against the manifest weight of the evidence. The Association argues that residency under the Guaranty Law is a question of law because such a "determination involved an interpretation of the statutory definition of `resident' in the Guaranty Association Law and a legal conclusion drawn from undisputed facts" and, therefore, the standard of review is de novo.
We first observe that the Trust's "manifest weight of the evidence standard of review" argument has been raised for the first time on appeal and is contrary to its position in the trial court and its notice of appeal to this court. More specifically, during the hearing on the Association's complaint, counsel for the Trust told the court that the "[p]rincipal place of business, from what we can tell, is a legal conclusion." (Emphasis added.) In the Trust's response to the Association's complaint, the Trust further stated: "Accordingly, this action involves only the issue of whether the Guaranty Law was correctly interpreted by the Director. As this appears to be a question of law, the Association correctly states the rule that a reviewing court is not bound by an administrative agency's conclusions of law." (Emphasis added.) In the Trust's notice of appeal to this court, it also states "that this matter involves only an issue of law, there being no facts in dispute between the parties." (Emphasis added.) In light of these statements and the fact that it is well settled that if a party fails to raise an issue in the trial court, it may not be raised for the first time on appeal (Eagan v. Chicago Transit Authority, 158 Ill.2d 527, 534, 199 Ill.Dec. 739, 634 N.E.2d 1093 (1994)), we hold that the Trust has waived this issue on appeal.
Notwithstanding the Trust's waiver, we briefly note that in a case in which the facts are not in dispute, the legal effect given to the facts by the administrative body becomes a matter of law that is judicially reviewable. Walgreen Co. v. Selcke, 230 Ill. App.3d 442, 448, 172 Ill.Dec. 26, 595 N.E.2d 89 (1992). Here, the facts are not in dispute. This case involves the application of the facts to the Guaranty Law's residency requirement provision. Therefore, the issue of whether the Trust is a resident of Illinois for the purpose of the Guaranty Law is a question of law, and the standard of review is de novo.
The Trust next argues that the definition of "resident" in the Guaranty Law is ambiguous because it does not define "principal place of business" and that the Director's decision was entitled to deference by the trial court. The Association argues that deference is usually not accorded an agency's decision unless "the courts have previously reviewed an agency's interpretation of the law in a long line of cases addressing factual circumstances," which it contends is not the situation here. Therefore, the Association maintains that the Director's decision was not entitled to deference by the trial court. The Trust counters that the existence of prior judicial interpretations of an agency's *297 ruling is not a prerequisite to granting deference to the agency's conclusions.[1]
Under the Administrative Review Law (735 ILCS 5/3-101, et seq. (West Supp. 1996)), where the facts are undisputed, the proper standard of review of an agency's legal conclusions is not the manifest weight of the evidence, but rather "whether the agency's decision is arbitrary, unreasonable and not supported by sufficient evidence." Obasi v. Department of Professional Regulation, 266 Ill.App.3d 693, 699, 203 Ill.Dec. 499, 639 N.E.2d 1318 (1994). While a court of review is not bound by an agency's interpretation of a statute, "courts will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute" because the agency's "interpretation expresses an informed source for ascertaining the legislative intent." Abrahamson v. Illinois Department of Professional Regulation, 153 Ill.2d 76, 97-98,180 Ill.Dec. 34, 606 N.E.2d 1111 (1992). However, "`[w]here the language of [an] act is certain and unambiguous the only legitimate function of the courts is to enforce the law as enacted by the legislature.'" Abrahamson, 153 Ill.2d at 91, 180 Ill.Dec. 34, 606 N.E.2d 1111, quoting Certain Taxpayers v. Sheahen, 45 Ill.2d 75, 84, 256 N.E.2d 758 (1970).
In the case at bar, the Director's interpretation of the sections of the Guaranty Law at issue here has never been addressed by Illinois courts. Section 531.03, entitled "Coverage and limitations," provides, in pertinent part:
"(1) This Article shall provide coverage for the policies and contracts specified in paragraph (2) of this Section:
* * * * * *
(b) to persons who are owners of or certificate holders under such policies or contracts; or, in the case of unallocated annuity contracts, to the persons who are contract holders, and who
(i) are residents of this State * * *." 215 ILCS 5/531.03 (West Supp.1996).
Section 531.05, entitled "Definitions," provides, in pertinent part:
"As used in this Act:
* * * * * *
(13) `Resident' means any person who resides in this State at the time the insurer is determined to be impaired or insolvent and to whom contractual obligations are owed. A person may be a resident of only one state which, in the case of a person other than a natural person, shall be its principal place of business." (Emphasis added.) 215 ILCS 5/531.05 (West 1993).
We reject the Trust's argument that the definition of resident in the Guaranty Law is ambiguous and that the Director's decision was entitled to be accorded deference. We find that a straightforward reading of the Guaranty Law's definition of resident is unambiguous. The Guaranty Law defines the residence of a nonnatural person to be the state in which it has its principal place of business at the time of the insurer's insolvency. Principal place of business is a legal term that has been interpreted by the courts on many occasions and "[t]he law assumes that the legislature in enacting new law is `aware of judicial decisions concerning prior and existing law and legislation.'" People ex rel. Sklodowski v. State, 284 Ill.App.3d 809, 819, 220 Ill.Dec. 810, 674 N.E.2d 81 (1996), quoting Niven v. Siqueira, 109 Ill.2d 357, 367, 94 Ill.Dec. 60, 487 N.E.2d 937 (1985). Therefore, we believe that the legislature intended that whatever factors Illinois courts use to determine the principal place of business of a non-natural person are applicable in determining residence under the Guaranty Law. Accordingly, based on the lack of ambiguity in the definition of resident *298 in the Guaranty Law, and the fact that the residence of a non-natural person is a question of law, we hold that the trial court was not required to accord deference to the Director's conclusions of law.
The next issue is whether the trial court properly determined that the Trust was not a resident of Illinois, as defined by section 531.05(13) of the Guaranty Law (215 ILCS 5/531.05(13) (West 1993)). The Trust first argues that "[p]rincipal place of business is not a term used in reference to trusts" in determining residence and, therefore, maintains that section 272 of the Restatement (Second) of Conflicts is applicable, under which the "`principal place of business' of a trust must be the place of administration." The Trust further argues that the Director, in determining that it was a resident of Illinois, properly relied on the facts that the Trust was created in Illinois, the Trust originally served primarily Illinois residents, the trustees originally all lived in Illinois and the Trust entered into contracts with an Illinois insurance company. According to the Trust, "the Director is required to focus upon the fundamental reliance of the Trust upon the protections of Illinois law by the trustees when these investments [annuity contracts] were originally purchased." The Trust also argues that an entity's residence under the Guaranty Law should not change until proven changed.[2]
The Association argues that the trial court properly reversed the Director's decision because he misapplied the Guaranty Law when he considered "historical facts" (facts that occurred prior to the insurer's insolvency) in finding that the Trust was a resident of Illinois. The Association further argues that the Director's interpretation of the Guaranty Law could lead to improper double recovery by insureds from different states. The Trust counters that other sections of the Guaranty Law protect against double recovery.
Factors to be considered in determining an entity's principal place of business are the location of offices responsible for the main activities of the entity, the location
where the business of the entity is carried out, the location of business decision-making, the residences of trustees and beneficiaries, and the "nerve center" of the entity. See, e.g., People v. First National Bank, 364 Ill. 262, 4 N.E.2d 378 (1936); Celanese Corporation of America v. Vandalia Warehouse Corp., 424 F.2d 1176 (7th Cir.1970); Kroblin Refrigerated Xpress, Inc. v. Iowa Insurance Guaranty Association, 461 N.W.2d 175 (Iowa 1990). Here, the statute further limits the consideration of these factors to those existing at the time of an insurer's insolvency. 215 ILCS 5/531.05(13) (West 1993). Because of the temporal nature of the definition of resident, we interpret the statute as precluding reliance on where the entity's principal place of business was prior to the insolvency of the insurer. Moreover, the statute plainly does not provide for a "person's" initial reliance or expectation (historical facts) as a basis for determining an entity's principal place of business.
In the case at bar, the Director, in determining that the Trust was a resident of Illinois, relied on Kroblin. In Kroblin, the court determined that a corporation which was chartered in Iowa and maintained registered corporate offices in Iowa was not a resident of Iowa entitled to coverage by the Iowa Insurance Guaranty Association because its main offices were located in Oklahoma, pertinent decisions were made in Oklahoma and there was a correlation between the payment of claims and the collection of assessments in Oklahoma. In the present case, the Director found that the Trust was a resident of Illinois because, notwithstanding "that historical significance is discounted based upon the statutes [sic] requirement that residence be determined at the time of the insolvency at issue," the Trust was an "Illinois trust" which had obtained insurance contracts from an Illinois insurer and these facts outweighed the "existing factors" at the time of Inter-American's insolvency.
We find that the trial court did not err in reversing the Director's decision. The *299 Director, after recognizing that historical factors are to be discounted in determining whether the Trust was a resident of Illinois, proceeded to base his decision almost solely on historical facts (the location of the purchase of the insurance contracts and that the Trust's activities, beneficiaries and trustees were formerly located in Illinois), and found that those facts outweighed the statutorily mandated consideration of the Trust's principal place of business based on the facts existing at the time of Inter-American's insolvency. Those existing facts were that none of the trustees or beneficiaries lived in Illinois, there was no record that the trustees communicated about the Trust in Illinois, the Trust did not maintain an office in Illinois, the Trust's records were kept in Pennsylvania and, notwithstanding that the Trust had a bank account in Illinois, there was no evidence of any activity in that account. We agree with the trial court, as it so aptly remarked, that "it seems undisputed that the trust continues to perform functions and those functions are performed from someplace outside of Illinois" and "[t]o the extent * * * [the Trust] lives and breaths [sic], it seems to be doing most of it outside of the State of Illinois these days."
Because the principal place of business is determined by the place of the operations of an entity, where it transacts business and the place of its administration, the Trust cannot be said to be a resident of Illinois based on the facts before us; there simply are no facts, as there were in Kroblin, to indicate any significant activities taking place in Illinois. Accordingly, we also reject the Director's analysis that if residence cannot be firmly established in any other state, residence under the Guaranty Law should be determined by the state in which the entity previously had its residence; if the Trust does not conform to the statute's requirement of having its principal place of business in Illinois at the time of it's insurer's insolvency, it is irrelevant for coverage under the Guaranty Law which other state it has its principal place of business, except possibly if it falls within the statute's nonresident provision, as discussed below.
We further briefly observe that even were we to accept the Trust's argument that, pursuant to the Restatement, the "`principal place of business' of a trust must be the place of administration of a trust" and the settlor's intent of what state law should govern, we would still find that under the Restatement the Trust could not be found to be a resident of Illinois. More specifically, the Trust relies on First National Bank, 364 Ill. at 268, 4 N.E.2d 378, where the court stated:
"In order to determine where the administration of the trust is located * * *, consideration must be given to the provisions of the trust instrument, the residence of the trustees, the residences, if any, of the beneficiaries, the location of the properties and the location where the business of the trust is to be carried on."
Because the Guaranty Law here requires that a determination of residency be made at the time of the insolvency of an insurer, consideration of the trust agreement's choice of law provision indicating the settlor's intent was a historical fact that must be discounted. Further, as stated above, the remaining factors listed in First National Bank simply have not been established in Illinois.
We also reject the Trust's argument that residence should not change until it is proven changed. The Trust relies on O'Boyle v. Personnel Board of Chicago, 119 Ill.App.3d 648, 75 Ill.Dec. 177, 456 N.E.2d 998 (1983), in support of its argument, where the court found that "[a]ffirmative acts of abandonment of the former domicile must be proved to sustain the abandonment required to effect a change of domicile." 119 Ill. App.3d at 655, 75 Ill.Dec. 177, 456 N.E.2d 998. However, O'Boyle is inapplicable to the present case. In O'Boyle, an individual's domicile, rather than a non-natural person's principal place of business, was at issue. In determining an individual's domicile, the intent of the individual is a factor to be considered, whereas intent is not a factor in determining the residence of a non-natural person under the Guaranty Law. Additionally, residence and domicile are not synonymous terms and the legal definition of residence varies according to its statutory context. See, e.g., Huber v. Reznick, 107 Ill.App.3d *300 529, 542, 63 Ill.Dec. 179, 437 N.E.2d 828 (1982) ("Unlike `domicile,' which one has continually from the moment of birth, a person need not at all times have a permanent abode, or `residence'"); In re Marriage of Passiales, 144 Ill.App.3d 629, 634, 98 Ill.Dec. 419, 494 N.E.2d 541 (1986) ("The term `residence' as used in the divorce statute is not synonymous with domicile, but denotes a `permanent abode' or the place one considers as home"). Moreover, a non-natural person's principal place of business is determinative of residence under the Guaranty Law. Accordingly, we hold that the trial court properly determined that the Trust was not a resident of Illinois at the time of Inter-American's insolvency.
Lastly, the Trust argues that the Guaranty Law requires the Association to determine a nonresident's state of residence to establish whether the nonresident is covered by the exception to the residence requirement in the Guaranty Law. The Association argues that it need not determine a nonresident's state of residence because this determination is not binding on any other state's guaranty association.
In order for a nonresident to be covered by the Guaranty Law, four criteria must be met: (1) the nonresident's insurer must be domiciled in Illinois; (2) the insurer cannot have held a license or certificate of authority in the nonresident's state of residence; (3) the other state must have a guaranty association; and (4) the nonresident may not be eligible for coverage under the other state's guaranty law. 215 ILCS 5/531.03(1)(b)(ii)(A)-(D) (West Supp.1996). This nonresident exception in the Guaranty Law is very narrow. The Trust fails to cite to any Illinois case law interpreting this provision and our research reveals none, making this an issue of first impression. Although a determination of whether a nonresident is a "covered person" under the Guaranty Law would require a determination of the location of the nonresident's residence, it does not follow that the Association is required to make this determination for every claim it considers. The Guaranty Law simply contains no provision requiring that the Association consider the issue of a claimant's qualified nonresident status if it is not raised by a claimant. "When the legislature is silent, a court may not fill a void through judicial interpretation." Gabriel Builders, Inc. v. Westchester Condominium Association, 268 Ill.App.3d 1065, 1068, 206 Ill.Dec. 448, 645 N.E.2d 453 (1994). We hold, therefore, that because the Trust did not argue or present any evidence to the Association that it fell within the nonresident exception to the Guaranty Law, the Association was not required to determine whether the Trust was a qualified nonresident and, hence, was not required to consider in which state outside of Illinois the Trust was a resident.
For the reasons stated, we affirm the order of the circuit court.
Affirmed.
WOLFSON, P.J., and CERDA, J., concur.
NOTES
[1] The Trust also argues, relying on American Surety Co. v. Jones, 384 Ill. 222, 231-232, 51 N.E.2d 122 (1943), that the Director's "acts * * * are final and will not ordinarily be disturbed by the courts." However, American Surety is inapplicable here because there our supreme court found that the decision to hold a particular hearing was discretionary and the Director's granting of a certificate of authority was not subject to judicial review. 384 Ill. at 231, 51 N.E.2d 122. In contrast, the final decisions of the Director in applying the Guaranty Law are judicially reviewable. 215 ILCS 5/531.11(3).
[2] The Association argues that the Trust waived the argument that residence does not change until proven changed by failing to raise it in the trial court. However, the record shows that this argument was briefly raised in the trial court by the Director's attorney.