Michael H. FRITZSHALL, Appellant,

v.

BOARD OF POLICE COMMISSIONERS, Respondent.

No. WD 48381.

Missouri Court of Appeals, Western District.

Aug. 2, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1994.

Application to Transfer Denied Nov. 22, 1994.

Michael W. Manners, Independence, for appellant.

Dale H. Close, Kansas City, for respondent.

Before SMART, P.J., and LOWENSTEIN and FENNER, JJ.

SMART, Judge.

The employment of Michael H. Fritzshall, a police officer in the Kansas City, Missouri Police Department, was terminated June 26, 1992 by the Board of Police Commissioners for violation of Police Department policy 205, which requires that members of the Department be "residents" of the City of Kansas City, Missouri. The Circuit Court affirmed the decision of the Board. Fritzshall now brings his appeal to this court.

Section 84.570, RSMo 1986 provides that no person shall be appointed a police officer who is not proven to be a bona fide citizen and resident of such city for at least one year. It further provides that the residency requirement may be waived during a probationary status, provided that at the completion of the probationary period, the officer becomes a bona fide resident of the city. The Police Department has supplemented the statute with policy 205, which requires that a member of the Department will *remain* a resident during the full term of employment with the Department. The policy defines "residence" as the "true, fixed and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning."

Officer Fritzshall began working for the Police Department in 1972. At that time, he resided in Kansas City. The residence policy at the Department was not enforced. It was no secret that some officers actually resided outside the city, maintaining "paper" addresses in Kansas City. In 1980, Fritzshall and his family built a house in Raymore, Missouri, south of Kansas City. Fritzshall established his own "paper" address at his uncle's home in Kansas City. In 1982, the Department began enforcing the residency requirement. Fritzshall registered to vote in Kansas City and began paying personal property taxes in Kansas City. He began spending some of his time at the Kansas City address. In 1985, after an investigation was commenced regarding his residence, Fritzshall was advised by his superiors to sell his home in Raymore and move his family to Kansas City. At that point, Fritzshall began staying in Kansas City during duty days, and spent the days he was off work in Raymore with his family. He voted in Kansas City, paid taxes in Kansas City, and had his vehicles registered in Kansas City. No disciplinary action was taken against him as a result of the 1985 investigation.

In 1989, the Department received a complaint that Fritzshall was living in Raymore in violation of Department policy. Fritzshall's superiors discussed his living pattern once again. On April 25, 1990, following an internal affairs investigation, Fritzshall was informed that he was in violation of policy 205. He was instructed to take immediate action to establish a legal residence within the city. The options presented to Officer Fritzshall were to move his family into Kansas City, or to obtain a divorce or legal separation. On May 21, 1990, Mrs. Fritzshall filed a petition for legal separation. On June 4, 1990, Fritzshall wrote to his supervisor. Fritzshall stated that he realized he had been in violation of the residence policy. He stated that in order to "correct this situation" he had established a residence for himself at 47 East 106th Street in Kansas City (his uncle's residence). He added that since his wife did not wish to move to the new address, they had petitioned the circuit court for a legal separation. He advised that a hearing had been set for July 11, 1990. He provided a copy of the petition for legal separation. The petition, which was filed in the name of Mrs. Fritzshall as petitioner, sought a decree of legal separation and the setting of reasonable child support, but did not request division of property or indebtedness, and did not request maintenance.

On July 2, 1990, Officer Fritzshall was informed by Lt. Colonel Floyd Bartch that the purported legal separation effort was perceived as being a subterfuge. Officer Fritzshall was told that a failure to fully comply would result in his termination. Officer Fritzshall was offered a 60 day extension to move his family to a residence in Kansas City, Missouri. Fritzshall declined the extension, and instead filed an action in United States District Court, claiming that the Police Department policy, as applied to him, unlawfully discriminated against married officers in violation of the equal protection clause of the fourteenth amendment of the United States Constitution. Fritzshall sought injunctive relief against the Department's proposed disciplinary action.

On February 12, 1991, a decision was handed down by the U.S. District Court. The Honorable Scott O. Wright found that the Department, in determining the location of an officer's residence, placed dispositive reliance upon the residence of the officer's spouse. Judge Wright held that the Department's residency requirement, as applied to married officers, violated the equal protection clause of the fourteenth amendment, because there was no rational basis for subjecting married officers to different residence criteria from those applied to single officers. The court directed that in determining the place where an officer resides, the Board must base its determination upon "factors that relate to that officer's residence, not based on his or her spouse's residence or where the officer plans to retire." The Board of Police Commissioners initially appealed the decision, and then dismissed the appeal.

On May 21, 1991, the charges and specifications which had been earlier filed in July, 1990, were amended to include various incidents of alleged violation of rules of conduct

and federal aviation regulations. Officer Fritzshall was suspended without pay pending further action.

The hearing before the Board of Police Commissioners was conducted pursuant to § 84.600 on March 31, 1992, and April 2, 1992. The Board of Police Commissioners, following the hearing, found that, although Fritzshall had listed 47 East 106th Street, Kansas City, Missouri, as his residence address since 1980, Fritzshall did not intend for the Kansas City address to be his fixed, true and permanent home. The Board found Fritzshall used the Kansas City address only in an attempt to appear to satisfy the Department's residency policy. The Board concluded that Fritzshall's residence was in Raymore, Missouri, and that he was in violation of Department policy. The Board affirmed his suspension pending the hearing, and ordered the termination of his employment.

Fritzshall appealed the decision of the Board to the Circuit Court of Jackson County, seeking review of that decision pursuant to § 536.100. The Circuit Court affirmed the decision of the Board. On appeal in this court, Fritzshall contends that the Board erred in holding that he was not a resident of Kansas City because the decision was not supported by competent and substantial evidence. Fritzshall also complains that the decision of the Board deprived him of due process of law in that the Department never informed him how he could satisfy the residence policy after "a portion of the policy had been declared unconstitutional." He contends that the failure to advise him how he could satisfy the policy deprived him of fair warning about the type of the conduct proscribed by the Department.

### Standard of Review

■ This court reviews the decision of the administrative agency, not that of the circuit court. *Harrington v. Smarr,* 844 S.W.2d 16, 18 (Mo.App.1992). The reviewing court is to determine in the first instance if the agency's findings were supported by competent and substantial evidence on the record as a whole. *Id.* While not bound by the administrative body's decisions on questions of law, the court gives due weight to the

expertise and experience of the agency and its opportunity to observe the witnesses. *Fleming Foods of Missouri, Inc. v. Runyan,* 634 S.W.2d 183, 184 (Mo.banc 1982). The fact finding function rests with the administrative agency, and if the evidence would warrant either of two opposed findings, an appellate court must uphold the factual determinations the agency has made. *Overland Outdoor Advertising Co., Inc. v. Missouri State Highway Comm'n,* 616 S.W.2d 563, 566 (Mo.App.1981). The review of personnel decisions by an administrative agency is limited, and the court is not at liberty to substitute its opinion or decision for that of the agency; the court has no authority to judge the credibility of witnesses. *Rockenfield v. Missouri Dept. of Corrections and Human Resources,* 740 S.W.2d 230, 231 (Mo. App.1987). In determining the issue of residence, the fact finder is entitled to believe all, none, or part of the declarations of the person subject to the inquiry. *Fowler v. Fowler,* 732 S.W.2d 235, 237 (Mo.App.1987). There is a strong presumption of validity in favor of administrative decisions and there is a reluctance by the courts to interfere with such discretion. *Conder v. Board of Directors of Windsor School,* 567 S.W.2d 377, 379 (Mo. App.1978). This court may reverse the findings of an administrative agency if it is determined that the decision is not supported by competent and substantial evidence on the whole record, or if the decision constitutes an abuse of discretion, or is unauthorized by law, or is arbitrary and capricious. *St. Joe Minerals Corp. v. State Tax Commission,* 854 S.W.2d 526, 529 (Mo.App.1993).

### The Ferguson Case

In *Ferguson v. Board of Police Commissioners of Kansas City,* 782 S.W.2d 814 (Mo. App.1990), this court reviewed a decision of the Board of Police Commissioners disciplining an officer for violation of the residence policy. Like Fritzshall, Officer Ferguson had moved his family from Kansas City to a house in Raymore. Ferguson then rented a room from his former neighbors in Kansas City. Ferguson stayed and slept in Kansas City during duty days, but usually went to Raymore to be with his family on days off.

He registered one of his cars in Kansas City, paid the Kansas City "sticker" tax, and paid Jackson County and Kansas City personal property taxes on the car. His driver's license showed a Kansas City, Missouri address. After an investigation into his residence, Ferguson registered to vote in Kansas City, and Mrs. Ferguson filed a suit for separate maintenance. At the hearing, Ferguson acknowledged that the suit for separate maintenance was for no purpose other than to try to effect compliance with the Police Department's residence policy. A Raymore neighbor also testified at the hearing as to Ferguson's frequent presence at the Raymore home, where she observed him conducting the usual activities of a homeowner. The Board found Officer Ferguson was in violation of the residence policy.

The circuit court reversed the Board's ruling, and the Board appealed to this court. This court affirmed the ruling of the Board of Police Commissioners. Noting that the definition of "residence" includes the concept of a person's true "home" and "principal establishment," this court found that Ferguson's residence was in Raymore. The court stated that the house in Raymore "has been and continues to be the center of his familial and social life." *Id.* at 817. The court quoted from *State v. Mueller*, 388 S.W.2d 53 (Mo.App.1965) concerning the definition of the word "home" as follows:

> [N]o definition can be complete which omits the element of sentiment, that quality, intangible and elusive though it may be, which nevertheless in the common understanding of a man serves most readily to identify his home and to distinguish it from every other place—that lifts it from an adjunct of living to an object of life—that goes beyond the law's language and animates the image with the breach of family affection and the gentle warmth of hospitality shared with friends, and endows it with comfort in affliction, with respite from care, and the promise of pleasant repose. . . .

*Ferguson*, 782 S.W.2d at 817.

There is much authority for the proposition that one's residence is not simply where one chooses to say it is; nor is it even where one spends much time, registers to vote, and so on. It is, indeed, far more than the sum of one's declaration, together with several indicia of residence. The legal definition of "residence" does not necessarily correspond to other uses of the term. *Goeman v. Goeman*, 833 S.W.2d 476, 479 (Mo.App.1992). Missouri cases generally hold that the term "residence" in most legal contexts is equivalent to "domicile." *Ferguson*, 782 S.W.2d at 817; *Scotton v. Scotton*, 359 S.W.2d 501, 506 (Mo.App.1962). "A man's residence, like his domicile, or usual place of abode, means his home, to and from which he goes and returns, daily, weekly, or habitually, from his ordinary avocations and business, wherever carried on." *Greene v. Beckwith*, 38 Mo. 385, 387 (1866).

### The District Court Order

An intriguing factor is introduced to this case by the order of the United States District Court that the Board, in determining the location of Fritzshall's residence, was not to consider the residence of Fritzshall's spouse, or the place Fritzshall plans to retire. Because the order of the United States District Court is a final order, the Board is bound by that order in this case. Neither is this court free to ignore it, whether or not it accurately applies the law. In this case the Board, in its findings of fact and conclusions of law, stated that it was "mindful of Judge Wright's order," and recited that it had not considered either factor in reaching its determination. The Board said that instead it had considered "the intent of Fritzshall" and found that "he intended to make Raymore his home."

It is not entirely clear how the district court order should have been interpreted. It appears that the court, having found the proposed illegal action to be the Board's *dispositive* reliance upon the residence of a spouse in the case of a married officer, then proceeds from that finding to the conclusion that in the case of ·Officer Fritzshall the residence of his spouse is to be *altogether* disregarded. It makes sense to conclude that the court did not intend as a general rule to altogether prohibit consideration of the location of the spouse's residence, but

rather to prohibit *dispositive* reliance upon the location of the spouse's residence. Any other view of the effect of the district court's order makes little sense.[1] However, since the Board purported to avoid consideration of the spouse's residence altogether, we will assume that the Board accepted the injunction with a view that, as to this case, it required that the Board avoid consideration of Mrs. Fritzshall's residence altogether.

### Factors Considered by the Board

Among the factors recited by the Board in its decision were the following: 1) Fritzshall uses the residence in Raymore for entertaining friends; 2) Fritzshall makes repairs and maintains the property; 3) Fritzshall has remodeled the home located on the real estate; 4) until 1992, Fritzshall used the Raymore address as his address for filing his income tax returns; 5) Fritzshall spends holidays at the Raymore address; 6) Fritzshall acknowledged he regards the Raymore address as an "old family home"; 7) while serving a 16 day suspension in 1989 for violating the residence policy, Fritzshall stayed at the Raymore address; 8) since the suspension in May, 1991, Fritzshall continued to stay at the Raymore address; 9) Fritzshall pays no rent at the Kansas City address;[2] 10) Fritzshall has a telephone at that address with call forwarding, which forwards his calls to the address in Raymore when he is not present at the Kansas City address; 11) Fritzshall acknowledged that when he goes to the Kansas City address, he intends to return to the Raymore address; 12) Fritzshall spends off duty days, recreation days and vacation days at the Raymore address; 13) Fritzshall acknowledged that he, like many other officers, established the Kansas City address only because of the residency requirement of the Police Department. Each of the foregoing factual findings was supported by the evidence. In contrast, the evidence presented by Fritzshall was that 1) he spends his duty days and nights at his uncle's house; 2) he votes in Kansas City; 3) he pays personal property taxes in Kansas City; 4) his driver's license shows his Kansas City address; 5) he registered his vehicle in Kansas City; 6) he has a telephone in Kansas City; 7) he states that he considers Kansas City his true home; and 8) when he leaves his Kansas City address, he intends to return.

### Form v. Intention

In evaluating whether or not it can be said that the Board abused its discretion in its interpretation of the facts, we must examine the meaning of the concept of "residence" as used in policy 205. If the policy denotes a place where the officer hangs his clothes and sleeps in a bed during his duty week, votes and registers his car, then it would appear that Fritzshall (and Ferguson before him) could only reasonably be found to be in compliance with policy 205. However, if the concept of residence is more of an abstract notion which is based upon Fritzshall's subjective sentiments and subjective intention, then there is much more room for the Board to find that Fritzshall's true home was in Raymore. The policy's definition of resi-

---

1. If the District Court assumes that the residences of marital partners are not interrelated as a general rule, we would suggest that such an assumption would appear to be contrary to Missouri law and to the law of other states. 28 C.J.S. *Domicile* § 16b (1941); *Ferguson*, 782 S.W.2d at 817. It would also appear to be fundamentally at odds with the nature of marriage. While people who are legally married may have separate, fixed, permanent homes, such a state is not the norm for marriage. In most cases, such a permanent arrangement would be called separation. Our view of the District Court's order is that, in order to protect Fritzshall from the Board relying *dispositively* on the spouse's residence, the court determined it was best as a remedial matter to prohibit consideration of her residence altogether in this particular case. We

conclude, however, that the court did not decide that consideration of a spouse's residence is always and necessarily immaterial, which would be an absurd proposition.

2. Fritzshall has a room at the house of his uncle, and he shares a bathroom. He testified he had personal property at the uncle's house. The record does not indicate how much personal property he maintains at his uncle's house. His uncle does not charge him rent because, according to Fritzshall, one time the uncle's family spent several months living with Fritzshall's father's family, and did not pay rent to Fritzshall's father. Also, Fritzshall's uncle and aunt appreciate the fact that he helps keep an eye on their property when they are spending the winter in Florida.

dence as a person's "true, fixed and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning," was taken directly from Missouri cases involving the concept of residence. *State ex rel. King v. Walsh*, 484 S.W.2d 641, 644 (Mo. banc 1972); *In re Toler's Estate*, 325 S.W.2d 755, 759 (Mo.1959); *see also Ferguson*, 782 S.W.2d at 816. We infer, therefore, that the Department chose to adopt precisely the concept of residence articulated in Missouri case law.

■ There is no contention here that Fritzshall is actually separated from his wife; rather, the contention is that her residence is not to be considered, and that he has an address in Kansas City where he spends much of his time, where he votes, registers his cars, and so on, in order, arguably, to establish his "home" in Kansas City. The definition of "residence" which the Police Department purported to apply in this case is not one of form, but rather one that looks to the reality of an officer's intent—to his sentiments—to "that quality, intangible and elusive though it may be, which nevertheless in the common understanding of a man serves most readily to identify his home and to distinguish it from every other place." *Ferguson*, 782 S.W.2d at 817. The home is that place which "provides him with comfort in affliction, with respite from care, and the promise of pleasant repose...." *Id.* Residence is largely a matter of intention to be determined not only from the utterances of the person but also from his or her acts and in the light of all the facts and circumstances of the case. *King*, 484 S.W.2d at 644.

*Pretending Mrs. Fritzshall Does Not Exist*

■ Missouri law has long included the notion that it will be assumed that a person's place of residence is the place where his or her family permanently resides. Section 1.020(13), RSMo Supp.1992; *State ex rel. Kelly v. Shepherd*, 218 Mo. 656, 117 S.W.

1169 (1909). While it may have been extremely strained and awkward for the Board of Police Commissioners to implement the District Court's order while attempting to discern the true home of Officer Fritzshall, without taking into account the home of his spouse, the Board in this case purports to have steered itself clear of the decreed Scylla and Charybdis of spousal location and retirement intention. Conceptually, it appears that in order to ignore the home of Mrs. Fritzshall, the Board would have to pretend that Mrs. Fritzshall does not exist. If there is any other way of completely disregarding the location of her residence while still giving consideration to other pertinent factors, it does not now occur to us. Of course, the Board could consider that Fritzshall's son resides in Raymore in Fritzshall's house. Therefore, one must further imagine that, when Fritzshall is not at the house in Raymore, his son, to the degree the son needs supervision, is cared for by a friend, relative, nanny, or housekeeper.

In light of these limitations, we turn again to the evidence the Board considered as to Fritzshall's current residence. As late as 1990, Fritzshall acknowledged that he was in violation of the residence policy.[3] He stated he would "correct" that circumstance by pursuing a legal separation and by establishing a residence in Kansas City at his uncle's house. The uncle's house is the same address he had used for his purported Kansas City residence since his move out of the City in 1980. He had already, prior to 1990, registered to vote in Kansas City, registered his car in Kansas City, and paid personal property taxes in Kansas City. He had installed a telephone. He had already altered his lifestyle to spend time in Kansas City. Yet these adjustments were not conclusive of the proposition that Fritzshall ever really abandoned Raymore as his *permanent* residence.[4] By definition, he could not have two "residences." *Schneider v. Friend*, 361 S.W.2d 308, 312 (Mo.App. 1962); 28 C.J.S. *Domicile* § 13a (1941).

---

3. At the hearing Fritzshall explained that he understood he was in violation only because his wife lived in Raymore.

4. Fritzshall mistakenly argues that a person may have more than one residence. Such a statement is true only when "residence" is used in a

way which is not synonymous with domicile. The Police Department, however, defines it in a way which is synonymous with domicile. *Ferguson*, 782 S.W.2d at 817; *Scotton*, 359 S.W.2d at 506.

In order to establish his residence in a new location, Fritzshall must show "actual personal presence in the new place and the intention to remain there, either permanently or for an indefinite time, *without any fixed or certain purpose to return to the former place of abode.*" *Scotton*, 359 S.W.2d at 507 (emphasis added). Mere presence at another location, no matter how prolonged, will not affect a change of domicile without an intention to make the new place a permanent residence or home. *In re Ritter's Estate*, 518 S.W.2d 453, 456 (Mo.App.1975). When the facts are conflicting as to a person's intent, his original domicile is favored as his legal domicile. *Moss v. Nat'l Life and Accident Ins. Co.*, 385 F.Supp. 1291, 1298 (W.D.Mo.1974).

Fritzshall acknowledged at the hearing that when he leaves Raymore, he always intends to return. Fritzshall never specifically testified as to any intent to abandon Raymore as his residence. Fritzshall acknowledged at the hearing that he does not pay rent in Kansas City. While he offered an explanation for why his aunt and uncle are glad to have him without the payment of rent, there was little evidence of any kind to show that Fritzshall really felt comfortable at his Kansas City address and regarded it as his "true home." The only personal property that we know for sure that he had there was a telephone. There was no testimony or exhibits suggesting that Fritzshall ever spent any time relaxing or recreating at this address. There was no evidence that he had a television, stereo, computer, books, or recreational items at the Kansas City address. The testimony was of a type which was consistent with the notion that he was really "visiting" when he stays with his aunt and uncle. The Board was not required to accept Fritzshall's declaration that the Kansas City address was his true home. *See Fowler*, 732 S.W.2d at 237. The Board could consider the fact that he paid no rent to his uncle. The Board was also entitled to consider that Fritzshall stayed in Kansas City only on duty days. The Board may have wondered why he did not, at least once in a while, spend an off day there, engaging in the comfort and repose of his true "home." The Board also might wonder why he did not take a day at his "Kansas City home" to do some laundry, some cleaning, yard work, or maintenance. The Board could have wondered why Fritzshall never entertained family or friends at his Kansas City address. He testified he did not recall ever returning to Kansas City to sleep on any occasion when he spent the evening in Raymore. The Board could reasonably have concluded from the evidence that his Kansas City address, which began as a "paper" address, continued to be window dressing for purpose of the Department policy, even though he actually spent time there. The Board could reasonably conclude that Fritzshall never really abandoned Raymore as his true home. Even though Fritzshall may have installed a telephone, stayed overnight at his uncle's house on his duty days, and made every effort to achieve a formalistic approach to "residence," he did not persuade the Board because the Board concluded that his heart—and his real home— were still in Raymore.

The Board understood that Fritzshall intended *to claim* Kansas City as his true home. The Board understood that Fritzshall hoped that if he could do enough things to satisfy the Board that he was a "resident," he could keep both his job and his home in Raymore. Such an objective required a price—he had to spend many evenings in Kansas City when he would really rather have been at home in Raymore. He could not by the discipline of making himself stay in Kansas City, or by the "force of imagination" cause some other place to constitute his true place of abode. "[T]he actual place of residence controls, and *one cannot be improvised by merely forming an intention to claim it elsewhere.*" *Trumbull v. Trumbull*, 393 S.W.2d 82, 91 (Mo.App.1965). (emphasis in original). "Temporary residence, even if long, merely for the purpose of transacting business or of engaging in employment . . . with the intention of returning to the original home, is not sufficient for the acquisition or change of domicile." 28 C.J.S. *Domicile* § 11e (1941).

While a declaration of residence is entitled to some deference, it may be overcome by evidence of strong circumstances to the contrary. *Northern v. McCaw*, 189 Mo.

App. 362, 175 S.W. 317, 319 (1915). Behavior may speak louder than words. *State v. Mueller*, 388 S.W.2d 53, 60 (Mo.App.1965). Here, Fritzshall had somewhat of an uphill battle, due to the fact that, patently, the Kansas City address was originally merely a "paper" address. Then, as time proceeded, and there was more of a tightening of the residence policy, Fritzshall would add things, such as voter registration, in an effort to make Kansas City his official residence. He added a telephone, and began staying overnight on duty days at the Kansas City address.[5] Spending duty nights in Kansas City was inconvenient, but not as burdensome as spending periods of suspension and days off in Kansas City. If Kansas City were not his true home, Fritzshall would have found it extremely difficult to make that sacrifice; and Fritzshall's actions indicated that he *did* find it extremely difficult to make that sacrifice.

On the facts of this case, the Board decision could have gone either way. If the evidence would warrant either of two opposed findings, we must affirm. *Overland Outdoor Advertising Co., Inc. v. Missouri State Highway Comm'n*, 616 S.W.2d 563 (Mo.App.1981). We conclude, in view of what is intended by the word "residence" in policy 205, that the decision is supported by substantial and competent evidence and is not an abuse of discretion, and is not arbitrary or capricious.

### Due Process of Law

Fritzshall next challenges the decision of the Board on due process grounds, contending that the Department's failure to inform Fritzshall how he could satisfy Department policy, after the District Court's order, deprived plaintiff of "fair warning" about the kind of conduct forbidden by the Department. Reviewing this point requires

once again that we come to grips with the meaning of policy 205. The policy defines "residence" as the "true, fixed and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning." If policy 205 in fact requires that an officer spend a certain amount of time at an address in Kansas City, register to vote at that address, and so on, then Fritzshall would be entitled to know the specifics of the necessary formula. If, on the other hand, the Police Department policy is really one of intent and emotional commitment, it appears the Department acted reasonably at that time (prior to the District Court's order) by informing him of a sure way to be in compliance with the policy—sell the house in Raymore and move his family to Kansas City, or else restructure his marriage by means of a bona fide divorce or legal separation.

Since 1989, the Department's application of the word "residence" has been consistent with the meaning of "residence" which it applied in the Fritzshall hearing and which it applied in *Ferguson*. The ruling by the District Court did not change the law of the State of Missouri, nor did it change the definition of "residence" in policy 205. It instructed the Board not to base its decision as to Fritzshall's residence on the residence of Mrs. Fritzshall. The Board, however, was still free to examine the evidence as to which location Fritzshall really considered his fixed, true and permanent home, without considering the fact that Mrs. Fritzshall resides in Raymore. Fritzshall could have understood from the wording of the policy and from Missouri law as illustrated in the *Ferguson* case that he has only one "residence"—one domicile—one true home—and that that home is the one which he intends to be his true, fixed and permanent home—the one about which he experiences those sentiments

---

5. Actually, he began spending some time at the Kansas City address in 1983, then began regularly staying overnight on duty days at the Kansas City address in 1985, at the time of a Department investigation. Assuming he did not cease staying there between 1985 and 1990, it is difficult to find any significant changes he made in 1990 after informing his superiors he was taking action to "correct" the circumstance of his noncompliance, other than the pursuit of the legal

separation, which he later abandoned. Fritzshall explained at the hearing that the only reason he thought he was in violation of the policy in 1990 was because his wife lived in Raymore, and he understood that the Department relied upon his wife's residence. The Board, however, was not required to believe that such understanding was the only reason he believed he was in violation of the policy.

of comfort, repose, and social intercourse which are associated with a true home. Fritzshall was already aware of the wording of the policy and of the decision in the *Ferguson* case. While neither the Board nor anyone else may have been able to articulate to Fritzshall precisely how the decision of the District Court would impact the implementation of policy 205 in his case, or exactly what additional steps, if any, he needed to take to be deemed in compliance with the policy, the decision of the District Court was a legal development which did not change the policy, but simply affected *the evidence* to be considered in Fritzshall's case. Fritzshall is entitled under the due process clause to no more than "fair" warning. The test is whether the language conveys a sufficiently definite warning when measured by common understanding and practices; absolute or mathematical certainty is not required. 73 C.J.S.Publ.Admin.Law and Procedure § 109 p. 653. The Department did nothing to lull Fritzshall into a false sense of security either before or after the District Court order. He had reason to know his claim of residence was challenged. This court is not aware of any requirement that the Department make a prediction of the course of litigation. *See* 16A Am.Jur.2d *Constitutional Law* § 818 (1979). The possibility that close questions may arise does not make a provision unconstitutional. *Berger v. United States,* 200 F.2d 818 (8th Cir.1952). Fritzshall knew as much about the effect of the District Court's order as the Department did. Upon the evidence in this case, the Board decision could have gone the other way. While the District Court's ruling substantially affected the analysis by eliminating consideration of Mrs. Fritzshall's residence, it did not, as we have observed, ensure a ruling in Fritzshall's favor.[6] At that point, the issue of whether or how Fritzshall could appear to comply without giving up the residence in Raymore was a matter of legal argument, as to which reasonable lawyers could differ. The Department's policy was not unreasonably vague. Fritzshall understood the risks he was facing. He has not shown that he was denied due process of law.

Judgment is affirmed.

All concur.

---

6. If there had been no District Court order, the result in Fritzshall's case would have been easily resolved by reference to the *Ferguson* case. The fact that in *Ferguson* a neighbor testified that Officer Ferguson spent time in Raymore and acted like it was his home, while in Fritzshall's case there was no neighbor's testimony, is of little consequence. As far as we can tell, there was no genuine dispute about the allegation of Fritzshall that he spent his duty days and nights in Kansas City, and his off duty days and nights in Raymore. The question about which Fritzshall was uncertain was whether, in view of the wording of the policy, the *Ferguson* case, and the District Court order in this case, there would be sufficient evidence to support a finding that Fritzshall's true domicile was in Raymore. The fact that it was difficult to predict does not mean that Fritzshall was denied due process.