**Robert E. GEORGE, Plaintiff–Appellant,**

v.

**Samuel E. JONES, Defendant–Respondent.**

**No. SD 30637.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 5, 2010.

Bruce A. Copeland, and Jeremy K. Brown, Copeland & Brown, Joplin, MO, for Appellant.

Philip Baker, Phil Baker Law Office, Fenton, MO, for Respondent.

Before BARNEY, P.J., BATES, J., and LYNCH, J.

PER CURIAM.

This is an election contest case brought pursuant to § 115.575, RSMo Cum.Supp. 2003, wherein appellant Robert E. George challenged the qualifications of respondent Samuel E. Jones to run for associate circuit judge of Lawrence County. At issue in this appeal is whether Jones "resided in" Lawrence County for a one-year period prior to the date of the election as required by § 478.320.6.[1] The trial court determined that, although Jones maintained a physical residence in Jackson County, he

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

nevertheless had sufficient contacts with Lawrence County to qualify as a candidate. George brings three points on appeal. Finding no merit in these points, we affirm.

## STANDARD OF REVIEW

As an initial matter, George contends, "[t]he facts and evidence are not in dispute"; thus, he argues no deference is due to the trial court's judgment and the only issue "is the legal effect of such evidence." George is mistaken. "Residency is a question of fact that is to be determined from the acts and intentions of an individual citizen." *State ex rel. Thomas v. Neeley*, 128 S.W.3d 920, 927 (Mo.App. 2004). "Conduct is an important factor in determining intention as actions speak louder than words." *Barrett v. Parks*, 352 Mo. 974, 180 S.W.2d 665, 666 (1944). Where the facts conflict, there is a presumption strongly in favor of an original or former residence as against an acquired one. *Marre v. Reed*, 775 S.W.2d 951, 955 (Mo. banc 1989). In this case, Jones unequivocally testified to his intention to return to Lawrence County, and he maintains considerable ties therewith. On the other hand, George points to other actions of Jones, such as registering to vote in Jackson County, as evidence of his intent to create a permanent residence in another county. As such, the evidence is conflicting, and the usual deference must be given to the trial court's judgment. *See Fritzshall v. Bd. of Police Comm'rs*, 886 S.W.2d 20, 25–28 (Mo.App.1994).

"In a court-tried case, our standard of review is that the court's decision will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or erroneously applies the law." *Landwersiek v. Dunivan*, 147 S.W.3d 141, 146 (Mo.App.

2004). "[I]n our review we [are] mindful of the trial court's opportunity to have judged the credibility of the witnesses and we afford the trial court due deference in that regard." *State ex rel. Thomas*, 128 S.W.3d at 927. "In determining the issue of residence, the fact finder is entitled to believe all, none, or part of the declarations of the person subject to the inquiry." *Fritzshall*, 886 S.W.2d at 23. "[I]f the evidence would warrant either of two opposed findings, an appellate court must uphold the factual determinations the [trial court] made." *Id.*

On appeal, this Court must "accept as true the evidence and reasonable inferences therefrom in favor of the prevailing party and disregard the contrary evidence." *Landwersiek*, 147 S.W.3d at 146.

## STATEMENT OF FACTS

As demanded by the standard of review that we must follow, *supra*, we cite only those facts and inferences favorable to Jones and the judgment, disregarding all evidence and inferences favorable to George.

For nearly his entire life, Jones had a physical residence in Lawrence County "[b]ecause that's home." In 1946, when Jones was 18 months old, his family moved to Mt. Vernon in Lawrence County, living at the same address until he was 17 years old. At that time, Jones enrolled in college in Springfield, Missouri, returning home for the summer months to his mother's new address in Lawrence County. Jones graduated in 1966 and served in the army the following two years. He returned home for a short while before enrolling in law school in Columbia, Missouri.

Jones graduated law school in 1971, returned to Mt. Vernon, and opened his own law practice. For the next ten years, Jones lived in Mt. Vernon, operating his

private practice and serving as prosecuting attorney. In 1981, the governor appointed Jones chairman of the State Tax Commission. He moved to Jefferson City for his tenure, but he still maintained a home in Lawrence County. From 1986 to 1991, Jones obtained employment in various cities—Kansas City, Chicago, and Oklahoma City—but he still retained a Lawrence County address.

In 1991, the governor appointed Jones associate circuit judge for Lawrence County, prompting his move back to Mt. Vernon. Jones served the community as November 2001, when President Bush appointed him regional administrator of the Small Business Administration ("SBA"). This prompted a move to the Kansas City area, but Jones was aware that such an appointment would last only as long as the president desired. Jones and his wife sold their home, but they kept a business and an apartment in Mt. Vernon, intending to return once his appointment concluded. Jones's position with the SBA officially ended on January 20, 2009, when President Obama took the oath of office.

At the time of trial in May 2010, Jones testified that he still lived in the Jackson County house, but that the family was in the process of moving back to Lawrence County. Although physically residing elsewhere, Jones maintains close ties to Lawrence County. He travels there "several" times per week; he maintains a business and an apartment in Mt. Vernon; he pursues his hobbies in the county; he supports the local businesses; he pays taxes to the county and is currently registered to vote there; and he belongs to a local church, the Rotary Club, and the American Legion. Jones keeps up with local issues as well, reading his hometown newspaper and regularly visiting with the city administrator. He has a long-term rela-

tionship with the local bank and keeps many personal belongings in Mt. Vernon.

In response to questioning regarding his reasons for remaining in Jackson County, Jones testified that his wife suffers from cancer, and their current house is close to the medical facility where she undergoes chemotherapy. As stated by Jones to opposing counsel: "[I]f you could tell me when and if Janice is going to recover from her illness and when the two of us would have the energy quite frankly to keep that house in condition to show at the drop of a hat, I could give you a better idea when we can be ready to leave. But right now our plate is pretty full." Jones further testified that as soon as the couple could manage it, "I'm moving." Jones also testified that, given the depressed nature of the real estate market, if he sold the Jackson County house, he would be "ruined there economically." Finally, as every witness testified, there was no question of Jones's intent to move back to Lawrence County.

The trial court found in favor of Jones on May 24, 2010. This appeal timely followed.

## DISCUSSION

On appeal, George contends that Jones's conduct shows his true intent to create a permanent home in Jackson County. George's three points on appeal all advance variants of that basic contention. Because these points lack merit, the trial court's judgment is affirmed.

### Point I: The Meaning of "Resided In"

In his first point, George contends the trial court misapplied the law when it determined that the § 478.320.6 phrase "resided in" has the same meaning as the phrase "resident of" as used in article V, section 21 of the Missouri Constitution. In *State ex rel. King v. Walsh*, 484 S.W.2d

641 (Mo. banc 1972), our Supreme Court defined the phrase "resident of" the state, as it is used in article IV, section 3 of the Missouri Constitution. For purposes of that case, the court held that residence and domicile had the same meaning and that this "does not mean and require actual, physical presence, continuous and uninterrupted" for a requisite period. *Id.* at 644. The Court found that the candidate, although living out of the state for numerous years, always had the intention to return to his home in Mexico, Missouri.[2] *Id.* at 645–46. Even though the candidate indicated other out-of-state residences on certain official documents—such as a bar application, tax filings, and a title to a car—this evidence did not "outweigh[ ]" evidence that he did not intend to abandon his Missouri residence. *Id.* at 647. If this is the correct standard to apply in this case, then Jones clearly meets the requirements. However, George argues that the legislature was aware of the *State ex rel. King* case and clearly intended a different requirement because it used different words when it enacted the later amendment to § 478.320. George contends that "resided in" must mean actual, physical

presence within the county. Such contention is without merit.

■ Under § 478.320.6, Jones must reside in Lawrence County for one year prior to the date of the election. George argues that the legislature must have intended an additional requirement because it amended the statute after the *State ex rel. King* case, and the Missouri Constitution already required associate circuit judges to be "residents of the county[.]"[3] Mo. Const. art. V, § 21 (1976). "[T]he [Missouri] Supreme Court has instructed that the primary rule of statutory construction is to glean legislative intent by understanding the statute according to its objective." *In re Estate of Bruce*, 260 S.W.3d 398, 405 (Mo.App.2008). "[A] proper analysis [ ] must consider the context in which the General Assembly used the words, the purposes that it intended to accomplish, and the evils that it intended to cure." *Harper v. Dir. of Revenue*, 118 S.W.3d 195, 199 (Mo.App.2003).

■ In construing § 478.320.6, our Supreme Court declared: "The purpose of residency statutes is to ensure that governmental officials are sufficiently connected to their constituents to serve them with

2. A home is not limited to physical location—there is an:

> element of sentiment, that quality, intangible and elusive though it may be ... that lifts it from an adjunct of living to an object of life—that goes beyond the law's language and animates the image with the breath of family affection and the gentle warmth of hospitality shared with friends and endows it with comfort in affliction, with respite from care, and the promise of pleasant repose.

*State ex rel. Reardon v. Mueller*, 388 S.W.2d 53, 57 (Mo.App.1965).

3. In his brief, George employs well-known rules of statutory construction. As such, George concedes the phrase "resided in" is ambiguous. *Harper*, 118 S.W.3d at 199. Given the varied treatment of words such as

resident, reside, residence, domicile, etc., we assume for purposes of this case that the phrase is ambiguous. *See* § 143.101 (resident means domiciled in state); *State ex rel. Bowden v. Jensen*, 359 S.W.2d 343, 349 (Mo.1962) (dictionary definition of "reside"); *Barrett*, 180 S.W.2d at 666 (reside and residence have same meaning and this meaning depends upon statutory purpose); *State v. Pearson*, 288 Mo. 103, 231 S.W. 595 (1921) ("resided in" does not mean "live in"); *Johnson v. Otey*, 299 S.W.3d 308, 310 (Mo.App.2009) (residence and domicile are different); *Genrich v. Williams*, 869 S.W.2d 209, 210 (Mo.App. 1993) (finding caselaw has "combined and shuffled" definitions of domicile, bona fide residence, legal residence, and residence); *Scotton v. Scotton*, 359 S.W.2d 501, 506–07 (Mo.App.1962) (resided means domiciled).

sensitivity and understanding." *Lewis v. Gibbons,* 80 S.W.3d 461, 466 (Mo. banc 2002). To equate "resided in" with "lived in continuously for one year," as George contends, would unduly restrict the legislative purpose of the residency requirement articulated in *Lewis.* Thus, Jones's continuous physical presence in Lawrence County for at least one year prior to the election is not required. Rather, according to the Supreme Court in *Lewis,* 80 S.W.3d at 466, the issue is whether he is sufficiently connected to Lawrence County to serve the constituents with sensitivity and understanding. If one looks only at the evidence favoring Jones and the trial court's judgment, as our standard of review compels us to do, Jones meets that requirement. He travels to Mt. Vernon several times per week, owns a local business, has a residence there, frequently discusses local issues with the Mt. Vernon city administrator, has long-time personal and business relationships within the county, considers Mt. Vernon his home, and previously served as an associate circuit judge in that county for seven years.

Moreover, the "evil" the statutory amendment intended to cure was not to change the meaning of the residency requirement, but to add a timeframe to measure it. In the constitutional provision, the only limitation is that associate circuit judges must be "residents of the county[.]" Mo. Const. art. V, § 21. The amendment answers the question of when. The focus of the amendment is not the words "resided in," but that the candidate reside in the county "at least one year prior to the date of his election[.]" § 478.320.6. Without the latter language, the amendment would add nothing to the constitutional provision and would allow a candidate to reside in the county from "birth to eighteen months, to leave the county and [ ] return 50 or 60 years later and be eligible to run." *Lewis,* 80 S.W.3d at 466. To remedy this evil, the legislature provided the time requirement. This Court's analysis of the statute must take into account that goal. *Harper,* 118 S.W.3d at 199.

Further, the fact that the legislature used different terminology is of no import. George claims that if the legislature did not want to substantively change the residency requirement, it would have simply used the same words as the constitutional provision. Equally likely, though, the legislature viewed the phrases as equivalent. In other words, the constitution provides a residency requirement and the legislature addressed only the duration, and not the substance, of that requirement. This follows for two reasons. First, it has used the phrases interchangeably in the past. For instance, in statutes relating to third-class cities, a councilman must be "a *resident of* the ward from which he is elected[.]" § 77.060 (emphasis added). In the next chapter providing for optional forms of third-class cities, a councilman "must *reside within* the ward he represents."[4] § 78.720 (emphasis added). If George's thesis is correct, then the legislature would require something more of a council member simply because the optional statutes were used. Clearly, this illogical result cannot be sustained. The only logical interpretation of these statutes is that the legislature believed "resident of" and "reside within" mean the same thing.

Second, we must presume the legislature knew of the interpretations courts have given to the phrases "resident of" and "reside in." *Belcher v. State,* 299 S.W.3d

---

4. The only caveat is that the council member must meet the requirement under the other statute, namely, he or she must reside within the ward for six months preceding the election.

294, 296 (Mo. banc 2009). Appellate courts throughout our history have used the terms interchangeably. *See Barrett*, 180 S.W.2d at 667 ("resided in" and "citizen of"); *State ex rel. McKittrick v. Wiley*, 349 Mo. 239, 160 S.W.2d 677, 686 (1942) ("residence in," "residing in," and "resident of"); *Pearson*, 231 S.W. at 595 ("resided in" and "resident of"); *Scotton*, 359 S.W.2d at 506–08 ("resided within," "residents within," and "resident of"). We presume the legislature was aware of the fact that appellate courts typically use such terminology interchangeably. If the legislature desired the phrases "resident of" and "resided in" to be interpreted or used differently, then it would have provided an explicit definition. *See* § 143.101 (defining resident).

The trial court did not err when it determined that the phrase "resided in" did not require an actual, continuous, physical presence in the county for continued residency. The phrases "resided in" and "resident of" merely require Jones to be "sufficiently connected to [his potential] constituents to serve them with sensitivity and understanding." *Lewis*, 80 S.W.3d at 466. The evidence demonstrates Jones's ties to Lawrence County meet the statutory purpose. As such, Jones is a resident of and resides in Lawrence County. George's first point is denied.

### Point II: Effect of Voting in Jackson County

In his second point, George argues that because Jones voted in Jackson County, it is "conclusively established that he was a 'resident of' Jackson County[.]" George asserts that because the Missouri Constitution requires a voter to be a resident of the county in which he votes, "one of two things must therefore be true": Respondent must either be a resident of Jackson County, or he committed a crime under § 115.631, i.e., voter fraud. We disagree.

The legal validity of Jones's registration to vote or of his actual instances of voting in Jackson County is not at issue in this case, and we do not decide or express any opinion on any question related to either. *See, e.g., State ex rel. King*, 484 S.W.2d at 648. The only issue here is whether Jones was a resident of Lawrence County for the requisite time period, which, as previously discussed, is a question of fact. *Id.* at 644. While any statement made by Jones in connection with voting in Jackson County is evidence tending to support the inference that he intended to abandon his Lawrence County residence and establish his new residence in Jackson County, it is not conclusive upon that issue. *Id.* at 647 (statement of residency to the Georgia Board of Law Examiners as required by Georgia statute is not conclusive and may be outweighed by evidence to the contrary). George has not cited us to any legal authority mandating a trial court make a factual finding of residency based solely upon the conclusiveness of one particular circumstantial fact before it. The trial court committed no legal error in considering and weighing the evidence of Jones's voting in Jackson County along with all of the other evidence in the record to make its factual finding as to Jones's residency. George's second point is denied.

### Point III: Finding that Jones Did Not Abandon His Lawrence County Residency is Not Against the Weight of the Evidence

The trial court found that, while Jones's "bodily presence" was in Jackson County, he "did not exercise the intention to abandon Lawrence County as his residence." In his third point, George asserts that this finding is against the weight of the evidence. We disagree.

"Appellate courts should exercise the power to set aside a decree or judg-

ment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). "The phrase 'weight of the evidence' means its weight in probative value, rather than the quantity or amount of evidence." *Puzzanchera v. Loetel,* 293 S.W.3d 51, 61 (Mo. App.2009). "The weight of the evidence is not determined by mathematics, but depends on its effect in inducing belief." *Ray Klein, Inc. v. Kerr,* 272 S.W.3d 896, 898 (Mo.App.2008).

 We have previously recounted the evidence supportive of this finding, which George has essentially omitted from his against-the-weight-of-the-evidence analysis, and there is no necessity to repeat it here. George merely argues that other evidence—voting in Jackson County, not moving, income tax returns, and bar enrollment—shows otherwise. The trial court was faced with conflicting evidence and had to weigh that evidence to determine which reasonable inference to draw therefrom—whether Jones intended to retain his residency in Lawrence County while living in Jackson County or whether he intended for Jackson County to become his new residence. "If the evidence would warrant either of two opposed findings, we must affirm." *Fritzshall,* 886 S.W.2d at 28. This is especially true when, as here, there is no question as to Jones's original domicile in Lawrence County. "When the facts are conflicting as to a person's intent, his original domicile is favored as his legal domicile." *Id.* at 27. Because we are not firmly convinced that the trial court's factual finding is wrong, Point III is denied.

The trial court's judgment is affirmed.