

# In the Missouri Court of Appeals
# Eastern District

SPECIAL DIVISION

| | | |
|---|---|---|
| VICTORIA DATT, | ) | No. ED109243 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | |
| | ) | Hon. Michael J. Fagras |
| NICHOLAS SCHROER, | ) | |
| | ) | Filed: |
| Respondent. | ) | October 30, 2020 |

This is an appeal from the judgment entered after a bench trial finding that Representative Nicholas Schroer of the 107th district in Missouri's House of Representatives is a resident of the 107th district and will remain on the ballot for reelection. We affirm.

Virginia Datt is Representative Schroer's opponent in the November 3, 2020 election for Representative of 107th district. She filed a petition under Section 115.526, seeking to remove him from the ballot on the ground that he is no longer "a resident of" the 107th district as required by Article III, Section 4 of the Missouri Constitution and, thus, no longer qualified to represent that district. The court held a bench trial at which the following evidence was admitted.

Representative Schroer testified that he and his wife had lived in O'Fallon, Missouri within the 107th district since 2013. Representative Schroer was elected in

2016 and began serving his first term as Representative of the 107th district in 2017. Representative Schroer and his wife have two daughters, one of whom needs special education services. Representative Schroer testified that he and his wife attempted, but were unable, to acquire the needed services at a school within the 107th district. Therefore, they decided to sell the house in O'Fallon and, in April of 2020, started the process of purchasing a house in Defiance, Missouri--outside the 107th district--where Representative Schroer's daughter could receive the services she needs. Defiance is approximately 15-minutes by car from the 107th district.

Representative Schroer testified it was never his intent for the Defiance house to be *his* primary residence. The plan was that his wife and daughters would live in the Defiance house and he would rent an apartment within the 107th district so that he could maintain his residence there and continue as its representative. On May 20, 2020, he entered a lease agreement with his family friend Mary Gerst to rent space in the house where she lived with her mother, Elizabeth Gerst, in O'Fallon within the 107th district. The lease expires at the end of 2022, which is when Representative Schroer's third term would end if he were to be reelected this November 2020.

On May 21, 2020, Representative Schroer and his wife closed on the purchase of the Defiance house. Both his wife as the borrower and Representative Schroer as co-borrower signed for the loan to purchase the house and each checked the box next to their names indicating their intent to occupy the house as their primary residence. Representative Schroer explained that, although he had no such intent to make the Defiance house his primary residence, he believed based on his reading of the application

2

instructions that if one of the borrowers was going to live there, they both had to check that box. He testified he did not intend to mislead anyone by checking that box.

Representative Schroer spends some amount of time at both the Defiance house and the Gerst house and keeps personal belongings in each place. Representative Schroer testified that when he is not traveling, he tries to be in Defiance when his daughters go to bed, sleep at the Gerst house and then go back to Defiance in the morning to take the girls to school. He also spends time on the weekends with his family in Defiance.

Representative Schroer has listed the Gerst house as his address on his candidate committee form, his campaign bank account, his driver's license, his voter registration card and his case.net account. Representative Schroer testified that he receives his mail at the Gerst house. The Defiance house is listed as the address of Representative Schroer and his wife on the declaration page of an automobile insurance policy and as Representative Schroer's address on a car loan application.

The trial court expressly found Representative Schroer credible and determined that leasing the Gerst house manifested his "intention to remain a resident of the 107th [district] in order to serve the constituents" of that district. The court concluded that Datt failed to meet her burden of proving a basis to remove Representative Schroer from the ballot, and entered judgment in Representative Schroer's favor. This appeal follows.

We will affirm the judgment in this court-tried election contest case unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *George v. Jones*, 317 S.W.3d 662, 664 (Mo. App. S.D. 2010). Datt contends that the trial court misstated and misapplied the law and that the judgment is against the weight of the evidence. We disagree.

3

Article III, Section 4 of the Missouri Constitution states that each representative shall be, among other things, "a resident of . . . the district which he [or she] is chosen to represent for one year" before the day of his or her election. *See also* Section 21.080 (requiring same). This residency requirement "ensures that state representative candidates are sufficiently familiar with the people and issues of the district they seek to represent." *Peters v. Johns*, 489 S.W.3d 262, 275 (Mo. banc 2016). Residency requirements also "ensure that governmental officials are sufficiently connected to their constituents to serve them with sensitivity and understanding." *Lewis v. Gibbons*, 80 S.W.3d 461, 466 (Mo. banc 2002) (construing residency requirement for associate circuit judges in Section 478.320.6); *see also George*, 317 S.W.3d at 666 (same).

Residency is a question of fact, one that is "often difficult to determine." *State ex rel. King v. Walsh*, 484 S.W.2d 641, 644 (Mo. banc 1972) (construing residency requirement for governor in Article IV, Section 3). Residence is largely a matter of intention, and courts consider "the acts and utterances of the person" in the light of all the facts and circumstances of the case, paying particular attention to "the declarations of the person and the acts made before, at, and after the time the domicile is in dispute." *Klindt v. Klindt*, 888 S.W.2d 424, 427 (Mo. App. W.D. 1994); s*ee also King*, 484 S.W.2d at 644; *see also George*, 317 S.W.3d at 664.

Residence or domicile[1] is generally defined as the place where a person has "his true, fixed and permanent home and principal establishment, and to which whenever he is

---

[1] "Residence" and "domicile" are synonymous and used interchangeably for purposes of election residency requirements. *See In re Contest of Primary Election Candidacy of Fletcher*, 337 S.W.3d 137, 142 n.7 (Mo. App. W.D. 2011).

absent he has the intention of returning." *Id*. A person can have only one residence, which "once established, continues until he renounces it and takes up another in its stead." *Id*.

> In order to effectuate a change [in residence] it is necessary that there shall be actual personal presence in the new place and also the present intention to remain there, either permanently or for an indefinite time, without any fixed or certain purpose to return to the former place of abode.

Id. (internal marks and citations omitted). In other words, the person must intend "to abandon the old and establish the new." *Id*. at 645, 657 n.4. One's intentions with respect to the new residence cannot be based upon a temporary purpose. *See id.* at 645; *see also Klindt*, 888 S.W.2d at 427. Where the relevant facts regarding intent are conflicting, there is a "strong presumption" in favor of finding residence in the original domicile and not the newly acquired one. *King*, 484 S.W.2d at 645; *see also George*, 317 S.W.3d at 664.

Correct application of the above principles depends on proper identification of which is the original residence and which is the allegedly new residence. Representative Schroer had been a resident of the 107th district since 2013, serving as its representative since 2017. Datt's challenge here is based on Representative Schroer's recent purchase of a house in Defiance outside the district. Thus, the 107th district is Representative Schroer's original residence, and the district encompassing Defiance is the purported newly acquired residence. The question then is whether Representative Schroer intended to abandon his original residency in the 107th district, without any intent to return, and instead make Defiance his new permanent or indefinite residence.

In her first two points on appeal, Datt contends that the trial court misstated and misapplied this law. We disagree. The trial court correctly applied the above analysis and concluded that Representative Schroer never intended to abandon his residence in the 107th district as evidenced by, among other things, his lease of the Gerst house. Datt insists that

5

it was error for the court to rely on the lease of the Gerst house to establish Representative Schroer's residency in that district because it had only a "temporary purpose" in that it expired when his next term ended. A temporary lease might not suffice to demonstrate an intent to make that place one's *new* permanent or indefinite residence. But no one claims that Representative Schroer is attempting to *establish new* residency in the 107th district.[2] It is the other way around: Datt claims Representative Schroer *relinquished original* residency in the 107th district and established a new residence in Defiance. In this context, the fact that Representative Schroer entered a two-year lease in his original domicile at essentially the same time he purchased a house in Defiance is certainly probative of whether he intended to abandon the 107th district without any intent to return. This is the context in which the trial court considered the lease, and there was nothing erroneous about doing so.

Datt also argues that the court failed to consider that Representative Schroer's "true, fixed and permanent home" is presumptively in Defiance where his family lives and where his "heart is." To be sure, there is an "element of sentiment" in the definition of "home" that conjures images of "the breath of family affection and the gentle warmth of hospitality shared with friends." *State upon Information of Reardon v. Mueller*, 388 S.W.2d 53, 57– 58 (Mo. App. 1965). Section 1.020(14) defines residence as "the place where the family of any person permanently resides." As Datt points out, the court in *Reardon* said this statute "codified the presumption of law." 388 S.W.2d at 58. But the court in *Reardon* did not actually *rely* on that presumption. *See Henderson v. Murray,* 78 S.W.3d 147, 149 (Mo.

---

[2] Datt's attempt to analogize Representative Schroer's situation to that of a professional baseball player--who would not necessarily become a resident of a place simply because he lives there temporarily while playing for his team--fails.

6

App. E.D. 2002) (noting *Reardon*'s more than "five-page analysis of different factors that are relevant to determining an individual's residence"). Rather, courts—including in those cases Datt insists relied on the presumption—consider myriad factors when determining one's residence, and the place one's family resides is significant but only one of the relevant facts. *See id.; King,* 484 S.W.2d at 644; *George,* 317 S.W.2d at 664*; see also Ferguson v. Board of Police Commissioners of Kansas City*, 782 S.W.2d 814, 816 (Mo. App. W.D. 1990) (quoting "presumption" language from *Reardon*, but expressly noting that consideration of family's residence "is not all"); *Fritzshall v. Board of Police Commissioners*, 886 S.W.2d 20, 25 (Mo. App. W.D. 1994) (discussing, with no mention of presumption, eight factors regarding residency); *Trusler v. Tate*, 941 S.W.2d 794, 798 (Mo. App. W.D. 1997) (mentioning presumption, but analyzing numerous other factors regarding residency). The trial court properly considered that Representative Schroer's family resided in Defiance as one of several factors in determining whether he had established that place as his new residence.

The court did not misstate or misapply the law. Points I and II are denied.

In her third point on appeal, Datt contends that the judgment is against the weight of the evidence. "The against-the-weight-of-the-evidence standard of review serves only as a check on a trial court's potential abuse of power in weighing the evidence." *See Aughenbaugh v. William*s, 569 S.W.3d 514, 527 (Mo. App. E.D. 2018). "When the evidence poses two reasonable, although different conclusions, we must defer to the trial court's assessment of that evidence." *Id*. at 528. We will reverse the judgment only in the rare case that we have a firm belief the judgment is wrong. *Id*. This is not that rare case.

As is often true in cases determining residency, here the court was faced with evidence that could reasonably lead to either of two conclusions. *See, e.g., George*, 317 S.W.2d at 669; *see also, e.g., Fritzshall*, 886 S.W.2d at 28 (finding case could "go either way" on facts in evidence). On the one hand, the fact that Representative Schroer entered a lease in the 107th district for the stated purpose of remaining a resident thereof at the time he purchased the Defiance house supports the conclusion that Representative Schroer did not intend to abandon the 107th district as his residence, with no intent to return, and establish a new permanent residence in Defiance. On the other hand, the fact that Representative Schroer's family lived in the Defiance house and the lease was only temporary supports the conclusion that he did in fact intend for Defiance to be his new and permanent residence. These conflicting facts gave rise to the strong presumption in favor of the original domicile, which the trial court properly applied in assessing these facts and reaching its conclusion that Representative Schroer was still a resident of the 107th district. *See King,* 484 S.W.2d at 645; *George,* 317 S.W.2d at 665, 669. In this situation, we must defer to the trial court's assessment of the evidence and affirm the conclusion it reached.

Datt attempts to circumvent this result by arguing that the evidence supporting the trial court's conclusion was of *no* probative value and was, therefore, necessarily outweighed by evidence supporting the opposite conclusion. She contends that the evidence relied on by the trial court consisted only of Representative Schroer's self-serving statements, which were in any event contradicted by his conduct. Determining whether Representative Schroer's statements were self-serving is squarely within the trial court's duties to assess his credibility. *See generally Perez v. Missouri State Board of Registration for Healing Art*s, 803 S.W.2d 160, 164 (Mo. App. W.D. 1991). The trial court was—as it

is with all witnesses—entitled to believe all, part or none of Representative Schroer's declarations when determining residency. *See George*, 317 S.W.3d at 664. The court expressly found Representative Schroer's testimony credible, and we are not in a position to disturb that credibility determination on appellate review. Likewise, to the extent Representative Schroer's conduct conflicted with his stated intentions, that too was for the trial court to resolve and not for us to disturb. *See George,* 317 S.W.2d at 664, 669 (deferring to trial court's resolution of conflict between stated intention to remain in original domicile and acts suggesting intent to create permanent residence elsewhere).

The judgment was not against the weight of the evidence. Point III is denied.

The judgment is affirmed.

ROBERT G. DOWD, JR., Chief Judge

Gary M. Gaertner, Jr., J. and
Kurt S. Odenwald, J., concur.